IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HELEN KRAMER, et al.,<br><br>　　　　　　Defendant. | :<br>:<br>:　Civil Action No. 89-4340 (JBS)<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| STATE OF NEW JERSEY,<br>DEPARTMENT OF ENVIRONMENTAL<br>PROTECTION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ALMO ANTI-POLLUTION SERVICES<br>CORP., et al.,<br><br>　　　　　　Defendants. | :<br>:<br>:<br>:　Civil Action No. 89-4380 (JBS)<br>:<br>:<br>:<br>:<br>:　**OPINION**<br>:<br>:<br>:<br>: |

APPEARANCES:

Glenn Anthony Harris, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
    Attorney for Third-Party Plaintiffs Rohm & Haas Company;
    E.I. duPont de Nemours & Co.; Elf-Atochem North America,
    Inc.; Cytec Industries (on behalf of American Cyanamid Co.);
    Mobil Research and Development Corp.; Chemical Leaman Tank
    Lines; Continental Can; and Carpenter Technology, Inc.

Richard F. Ricci, Esq.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068-1791
    Attorney for Third-Party Defendant Alumax, Inc.

**SIMANDLE,** District Judge:

## I.   INTRODUCTION

The only remaining claims in this Superfund case are third-party claims asserted by certain settling parties against Alumax Mill Products, Inc., the lone non-settling Defendant.[1]  The matter is before the Court on Alumax's motion for summary judgment as to these claims [Docket Item 136].  The claims are made pursuant to § 107 and § 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601,[2] and the analogous provisions of the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11f.  The principal issue is whether settling parties can sue non-settling parties for contribution under § 113(f)(3)(B) of CERCLA if the settling parties have not admitted CERCLA liability.

---

[1]  The settling parties include Rohm and Haas Company, E. I. du Pont de Nemours and Company, Arkema Inc. (f/k/a Elf Atochem North America, Inc.), Cytec Industries Inc. (as successor to American Cyanamid Company), ExxonMobil Corporation (as successor to Mobil Research and Development Corp.), Quality Carriers, Inc. (f/k/a Chemical Leaman Tank Lines, Inc.), Crown Beverage Packaging, Inc. (f/k/a Continental Can Company), and Crown Cork & Seal Co., Inc.

[2]  As is the case with many comprehensive statutes, the provisions of CERCLA are generally known by the section of the Act, rather than their section in the United States Code. Section 107 and § 113 are codified as 42 U.S.C. § 9607 and § 9613, respectively.  For brevity and consistency with the language of the relevant precedent and the parties' briefs, the Court will refer to the Act's sections.

## II.  BACKGROUND

In 1983, the United States declared the Helen Kramer Landfill to be a federal Superfund site and placed it on the National Priorities List, making it eligible for remediation under CERCLA.  See United States v. Kramer, No. 89-4340, 2009 WL 2339341, at *1 (D.N.J. July 27, 2009) (Kramer VII).[3]  The United States and New Jersey brought CERCLA actions against a limited number of defendants, and began the long process of cleaning up the site.  Id.  From 1983 to 1994, both sovereigns incurred substantial costs for their work remediating the Landfill.  Id. Their CERCLA actions were consolidated into the present case. Id.

Some of the direct defendants impleaded several hundred third-party defendants, including the movant, Alumax.  Id.  The initial third-party complaint asserted a claim for contribution against Alumax under § 113(f)(1) of CERCLA,[4] a claim for

-----

[3]  Many of the relevant facts have previously been determined by this Court's numerous opinions on this matter.  See United States v. Kramer, 757 F. Supp. 397 (D.N.J. 1991) (Kramer I); United States v. Kramer, 770 F. Supp. 954 (D.N.J. 1991) (Kramer II); United States v. Kramer, 913 F. Supp. 848 (D.N.J. 1995) (Kramer III); United States v. Kramer, 953 F. Supp. 592 (D.N.J. 1997) (Kramer IV); United States v. Kramer, 19 F. Supp. 2d 273 (D.N.J. 1998) (Kramer V); United States v. Kramer, 644 F. Supp. 2d 479 (D.N.J. 2008) (Kramer VI); United States v. Kramer, No. 89-4340, 2009 WL 2339341 (D.N.J. July 27, 2009) (Kramer VII).

[4]  Section 113(f)(1) provides in relevant part: "Any person may seek contribution from any other person who is liable or potentially liable under section [§ 107(a)], during or following

3

declaratory relief regarding Alumax's liability for future response costs pursuant to § 113(g)(2) of CERCLA, and a contribution claim pursuant to the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11f.[5]

In 1998, the third-party plaintiffs settled the claims of both the United States and New Jersey for the past and future costs of remediating the Landfill. Kramer VII, 2009 WL 2339341 at *2. Those settlements were contained in consent decrees that were entered by the Court. Id. The Settling Work Defendants (as the third-party plaintiffs are now called) agreed to reimburse the state and federal agencies for their costs, manage the Landfill remediation, and pay for New Jersey's oversight of that work.[6] Id. In exchange, the Settling Work Defendants receive protection, pursuant to § 113(f)(2) of CERCLA and applicable state law, from any contribution claims being asserted against them for response costs or natural resource damages in the

---

any civil action under [§ 106] or under [§ 107(a)]."

[5] Section 58:10-23.11f provides in relevant part: "Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."

[6] This control is to continue through May 12, 2023 or demonstration that all of the standards in the Record of Decision have been achieved. The settling parties also settled the natural resource damage claims of the state and federal natural resource trustees in 1998.

future.  (Ricci Cert. Ex. A ¶ 12, Ex. B. ¶ 76, Ex. C ¶ 18.)
Importantly, the Settling Work Defendants stated in the consent
decrees that they did not admit liability under CERCLA.  (Id. Ex.
A. ¶ 1(L), Ex. B. ¶ 6; Ex. C ¶ 6.)

        After the settlements were entered, the focus of this case
shifted to the Settling Work Defendants' recovery of costs from
non-settlors.  Under CERCLA, there are two ways for private
parties to recover costs from other parties:  claims under §
107(a) and § 113(f).  Section 107(a) provides that the parties
covered under that section are liable for, among other costs,
"any other necessary costs of response incurred by any other
person consistent with the national contingency plan."  §
107(a)(4)(B).  Passed as part of the Superfund Amendments and
Reauthorization Act of 1986, § 113(f) permits private parties to
recover cleanup costs from third parties in actions for
contribution.  It provides in relevant part:

        (1) Contribution

        Any person may seek contribution from any
        other person who is liable or potentially
        liable under [§ 107(a)], during or following
        any civil action under [§ 106] or under [§
        107(a)].

        (2) Settlement

        A person who has resolved its liability to the
        United States or a State in an administrative
        or judicially approved settlement shall not be
        liable for claims for contribution regarding
        matters addressed in the settlement.  Such

5

> settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
>
> (3) Persons not party to settlement
>
> (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

§ 113(f).

The proper interpretation of these provisions has been the frequent subject of litigation in the federal courts.  In 2007, the Supreme Court decided United States v. Atlantic Research Corp., 551 U.S. 128, 132 (2007).  The Court held, contrary to the majority of courts of appeals, that parties responsible for Superfund site pollution may bring § 107(a) claims against other responsible parties.  In so holding, the Supreme Court also clarified the relationship between § 113(f) and § 107(a), noting that § 113(f) contribution actions require "common liability" — a phrase that is at the center of the present dispute and examined in more detail below.  Id. at 138-39.[7]

In the wake of Atlantic Research, the Settling Work

---

[7]  Atlantic Research left open the question of what remedies a covered party may pursue when it sustains expenses pursuant to a consent decree following a CERCLA suit.

Defendants amended their third-party complaint.  By that time, this Court had already determined Alumax's status as a covered party under the settling parties' previous third-party complaint containing a § 113(f) claim.  See Kramer VI, 644 F. Supp. 2d at 489.  The third-party complaint now asserts a § 113(f)(3)(B) claim for the funds paid to reimburse the State for its response costs, and both a § 107(a) claim and a § 113(f)(3)(B) claim for the costs the settling parties incurred in paying for ongoing remediation efforts.

    Shortly after that amendment of the third-party complaint, the Third Circuit Court of Appeals decided Agere Systems, Inc. v. Advanced Envt'l Tech. Corp., 602 F.3d 204 (3d Cir. 2010), which made two holdings relevant to the present motion.  First, it held that while some responsible parties can bring § 107(a) claims under Atlantic Research, settling parties cannot bring § 107(a) claims because such parties are immune from counter-claims brought against them under § 113(f)(1).  In contemplating the ability of covered parties to bring a § 107(a) claim in these circumstances, the Supreme Court relied on the fact that a defendant "in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim." Atlantic Research, 551 U.S. at 140.  But in Agere, the settling parties were immune from contribution claims under Section 113(f)(2).  In the absence of the equalizing mechanism of a §

113(f) counterclaim, the Court of Appeals concluded that such covered parties cannot bring § 107(a) claims.  Agere also discussed the circumstances under which a settling party may bring a § 113(f) claim against another responsible party, applying the Supreme Court's discussion of contribution and "common liability" to § 113(f)(3)(B).  The meaning of this latter discussion is the primary topic of dispute between the parties on this motion.

In the present motion, Alumax asserts that Agere forecloses any § 107(a) claim brought against it because, as in Agere, the Settling Work Defendants are protected from counterclaim under § 113(f)(2).  The Settling Work Defendants concede that this Court is controlled by Agere on that point and that they cannot prosecute their § 107(a) claim under existing law.  Alumax also maintains that the Settling Work Defendants have no § 113(f)(3)(B) claim against them in light of Atlantic Research and Agere because the Settling Work Defendants have not admitted liability, and therefore do not share "common liability" as the two cases require to bring a contribution claim under § 113(f). The Settling Work Defendants argue that Alumax is misinterpreting the requirement of "common liability," and maintain that § 113(f)(3)(B) does give them a contribution action.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A fact is "material" only if it might affect the
outcome of the suit under the applicable rule of law.  <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  In this case,
the facts are undisputed, and the sole question is a matter of
law.

### B.  Scope of § 113(f)(3)(B)

According to the plain language of CERCLA, the Settling Work
Defendants "may seek contribution" from Alumax without admitting
liability.  Section 113(f)(3)(B) provides, "A person who has
resolved its liability to the United States or a State for some
or all of a response action or for some or all of the costs of
such action in an administrative or judicially approved
settlement may seek contribution from any person who is not party
to a settlement referred to in paragraph (2)."  § 113(f)(3)(B).
For the purposes of their § 107(a) argument, Alumax has conceded
that each Settling Work Defendant "has resolved its liability to
the United States or a State for some or all of a response action
or for some or all of the costs of such action in an

administrative or judicially approved settlement."[8]  Thus,
according to the statute, they "may seek contribution from any
person who is not party to a settlement referred to in paragraph
(2)."  § 113(f)(3)(B).

Additionally, in United States v. Compaction Systems Corp.,
this Court held that an admission of liability is not necessary
for a contribution action.  88 F. Supp. 2d 339, 351 (D.N.J. 1999)
("[P]arties that have entered a consent decree with the United
States without admitting liability may maintain a Section 113
claim for contribution.") (citing Transtech Industries, Inc. v. A
& Z Septic Clean, 798 F. Supp. 1079, 1086 (D.N.J. 1992)).
Accord. E. I. du Pont de Nemours and Co. v. United States, 508
F.3d 126, 133 (3d Cir. 2007) ("[A] party who has in fact been
held responsible (via adjudication or settlement with the EPA)
may bring an action under § 113(f).").

Notwithstanding the plain language of the statute and the
only precedent directly addressing the issue, Alumax contends
that Atlantic Research and Agere foreclose the Settling Work
Defendants' contribution claims because the Supreme Court has
held that "a PRP's right to contribution under § 113(f)(1) is
contingent upon an inequitable distribution of common liability

_____

[8]  They concede this because the "resolved its liability"
language is identical to the language identifying parties
protected by § 113(f)(2) from counterclaims seeking contribution,
which is the central premise in their § 107(a) argument under
Agere.

among liable parties," and the Third Circuit Court of Appeals applied this gloss on contribution to § 113(f)(3)(B).  See Atlantic Research 551 U.S. at 139; Agere, 602 F.3d at 220. Alumax argues that because the Settling Work Defendants did not admit their liability in the consent decrees, there is no "common liability" to form the basis for a contribution claim. Therefore, although CERCLA expressly authorizes parties in the settling parties position to bring contribution claims, Alumax contends that the statute's use of the word "contribution" creates an additional unstated requirement that such parties admit liability in order to bring contribution claims.

While the Court agrees with Alumax that the controlling precedent imposes a requirement of "common liability," the question is what this phrase means in the context of settlement. Alumax maintains that the controlling authorities' use of "common liability" requires proven CERCLA liability — which, in the context of settlement, requires an admission.  The Settling Work Defendants maintain that "common liability" only requires the resolution of potential CERCLA liability in such a way as to legally obligate the settlors to reimburse the United States or a state for the costs of cleanup.  As explained below, the Court agrees with the Settling Work Defendants.

Prior to 2007, the federal courts of appeals understood § 113(f) to be the exclusive remedy for potentially responsible

11

parties (PRPs) seeking to sue other PRPs, in part as an explanation for the seeming overlap between § 113(f) and § 107(a).  In 2007, the Supreme Court reversed the dominant interpretation, holding that the phrase "any other person" does not exclude the parties listed in § 107(a).  See United States v. Atlantic Research Corp., 551 U.S. 128, 135-36 (2007).  In Atlantic Research, the Supreme Court sought to dispel the notion that § 107 and § 113 provided two co-extensive options for bringing actions against third parties, and distinguished the remedies in two important ways.  First, the Court noted that § 107(a) cannot be used to recover costs pursuant to settlement, as it only provides a remedy for direct cleanup costs.  Id. at 139.  Second, the Court noted that while § 107(a) permits the filing of an action by any party who incurs clean up costs, § 113(f) is only a remedy for parties facing liability because of a CERCLA suit against them.  Relying on the common law definition of the word "contribution," the Supreme Court noted that "§ 113(f)(1) permits suit before or after the establishment of common liability," meaning that "a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties."  Id. at 138-39.

The Supreme Court's use of the common law definition of "contribution" in its dictum in Atlantic Research should not be read as an interpretation of CERCLA that requires a settlor to

prove or admit liability in order to seek contribution.  The
relevant discussion in Atlantic Research involved the Supreme
Court emphasizing, consistent with CERCLA's express language,
that not just anyone can bring a contribution action; only those
parties facing liability under CERCLA can do so.  The Supreme
Court did not elaborate upon the meaning of "common liability" in
the context of settlement.  But if one follows the Supreme
Court's lead in looking to the content of common law to determine
how joint liability works in the context of settlement, one
learns that the common law permits a contribution action based on
costs incurred by a settlement of liability without a finding
that the settlor would actually have been found liable.
According to the Restatement (Third) of Torts:

> A person who is otherwise entitled to
> contribution can recover contribution even
> though the person extinguished the liability
> of another by settlement rather than payment
> of judgment. A settlor need not prove that he
> would have been found liable to the plaintiff.
> A settler must only show that the settlement
> was reasonable.

Restatement (Third) of Torts: Apportionment of Liability § 23
("Contribution") cmt. h. (emphasis added).  Since a common law
contribution action permits a settling party to bring suit
without proven liability, Atlantic Research provides no basis for
believing CERCLA requires otherwise.

   Nor does Agere suggest that a settling party must admit
formal liability.  The relevant holding of Agere addressed the

question of whether a party could bring a contribution action under § 113(f)(3)(B) when the suit precipitating the settlement was time-barred.  Noting that "[c]ontribution claims under § 113(f) require a 'common liability' among PRPs at the time the underlying claim is resolved," the Court found that "the EPA claim must have been viable against both the plaintiffs and [non-settling defendant] at the time the EPA [brought suit]; otherwise, there is no common liability to serve as the basis of a contribution action."  Agere, 602 F.3d at 220 (emphasis added). In other words, Agere held that one cannot sue another for contribution as a result of settling a facially meritless claim.

Agere's description of "common liability" as requiring a "viable" claim "at the time the underlying claim is resolved," does not require an admission of liability on the part of the settling parties.  See Agere, 602 F.3d at 220.  One can resolve a viable claim without admitting liability — indeed, such resolution is commonplace.  A requirement that the claim being settled was viable is consistent with the common law notion of contribution which permits settling defendants to seek contribution when the settlement was reasonable.  In applying the notion of common liability to a settlement, a court must either rely on a party's admission of liability, or else examine the potential for common liability; the alternative would require the kind of full adjudication of the issue that settlement is

14

supposed to avoid.  The Court in Agere took the latter approach,
focusing on the question of "viable" common liability.  Id.
Thus, a party shares common liability with another if it resolved
a CERCLA claim that was viable against both parties.  It is not
necessary for the party to admit that if the claim had been
adjudicated, the party would ultimately have been found liable;
it suffices if the settling party demonstrates that the claim of
common liability was viable.

Finally, the general principles of statutory intepretation
all weigh against reading into § 113(f)(3)(B) an implicit
requirement of the admission of liability.  It is a basic
principle of statutory interpretation that "[i]f Congress had
intended to limit [the scope of a general statutory term to a
more specific subset], one would have expected it to have done so
expressly."  Olympic Pipe Line Co. v. City of Seattle, 437 F.3d
872, 880 (9th Cir. 2006) (citation omitted).  Unlike the broadly-
worded § 113(f)(1), the provision at issue in this case, namely §
113(f)(3)(B), sets the somewhat specific requirement of
resolution of "liability to the United States or a State for some
or all of a response action or for some or all of the costs of
such action in an administrative or judicially approved
settlement."  § 113(f)(3)(B).  If Congress had intended to narrow
even that specific category to judicially-approved settlements
that also admit liability, one would expect express language

doing so.

The reason no such language exists is because it would be contrary to the purpose of the statute, which, to the extent the plain language does not control, is this Court's ultimate guidestar in matters of statutory interpretation.  See Dole v. United Steelworkers of America, 494 U.S. 26, 35 (1990).  The purpose of § 113(f) is to encourage early settlement, punish non-settling liable parties, and encourage equitable distribution of reimbursement costs among the responsible parties.  See In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 208 (3d Cir. 2003) ("[T]he statutory scheme contemplates that those who are slow to settle ought to bear the risk of paying more"); United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1184-85 (3d Cir. 1994); accord. United States v. Cannons Engineering Corp., 899 F.2d 79, 92 (1st Cir. 1990).  Permitting the settlors who are bound by a court-approved CERCLA consent decree to seek contribution without formally admitting liability encourages settlement by avoiding opening defendants to future actions without any ability to defend them.  See Compaction, 88 F. Supp. 2d at 353.  A requirement of viable suit prior to settlement is consistent with this purpose by not imposing liability on a third party who could not conceivably have had any liability because the underlying claim was obviously meritless.  But the rule Alumax asks for is inconsistent with this purpose by discouraging

settlements of viable CERCLA claims by the federal or state governments.  Id.

In sum, the Court holds the plain text of § 113(f)(3)(B) explicitly states parties in the position of the Settling Work Defendants may bring a contribution claim.  § 113(f)(3)(B) ("A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution . . . ").  Nothing in the controlling precedent states otherwise.  The common law definition of contribution, grafted onto the statute by Atlantic Research and Agere, does not require admitted liability, but merely clarifies that a settling party may not impose liability on another without having settled a viable CERCLA claim.  And to the extent there is any ambiguity in the statute, general principles of statutory interpretation and the purpose of § 113(f) resolve that ambiguity in favor of the Settling Work Defendants.  A requirement of the admission of formal liability would foreclose any action against Alumax for the role it played in polluting the Landfill site, as a perverse reward for refusing to enter the settlement.  That is the opposite of what Congress intended in crafting § 113(f).  See Marsh v. Rosenbloom, 499 F.3d 165, 180 (2d Cir. 2007).  While a settlement must be entered in response to a viable CERCLA claim and judicially approved in

17

order to form the basis for contribution under § 113(f)(3)(B), it
is not necessary that a party to the settlement admit liability
under CERCLA to bring such a contribution action.


**C.  Judicial Estoppel**

Alumax argues that the Settling Work Defendants have
impermissibly shifted their position in this case.  In earlier
briefs, the Settling Work Defendants maintained that the record
contained no facts as to the Settling Work Defendants' liability;
that the claims against them were resolved without any admission
of liability or a finding of liability by this Court; and that
Alumax would have to prove their liability in any equitable
allocation.  (See Alumax's Rep. Br. 6.)  Alumax contends that it
is inconsistent with these previous representations for the
Settling Work Defendants to now maintain that they shared "common
liability" with Alumax for the purpose of a contribution claim
under § 113(f)(3)(B).

There is no such inconsistency.  Alumax's argument turns on
the same flawed understanding of the term "common liability" that
dooms their argument on the merits of the Settling Work
Defendants' § 113(f)(3)(B) claim.  As <u>Agere</u> explained, and as the
plain text of CERCLA requires by empowering a party to seek
contribution before a formal finding of liability, "common
liability" for the purpose of a contribution action under §

18

113(f)(3)(B) is different from the "common liability" shared by parties whose liability has been formally proven.  Settling parties may consistently claim that they shared the kind of "common liability" necessary for a contribution action based on money spent to settle a viable claim, while also denying that any such liability has been proven.  A main impetus for settlement is that a party may think it has a chance of being absolved of all liability at trial, but decide that the cost and risk of going to trial means that it is economically efficient to settle.  Congress sought to encourage parties to do just that, and to confer contribution rights upon settling parties as against non-settling parties under § 113(f)(3)(B).  Settling parties may consistently maintain that, as a legal matter, their liability has not been proven, but that they did incur costs to settle a viable claim of liability for which CERCLA provides a right of contribution.

### D.  Spill Act Liability

Alumax's argument as to Spill Act liability is similar to its argument with respect to § 113(f)(3)(B).  Alumax points to this Court's interpretation of the Spill Act as requiring an injury caused by "joint tortfeasors," and "that the party seeking contribution has paid an amount in excess of its pro rata share of the damage."  See Interfaith Community Organization v.

19

Honeywell Intern., Inc., 215 F. Supp. 2d 482, 496 (D.N.J. 2002).
Alumax reads from this dictum in Interfaith Community a
requirement of an admission of liability.  But nothing in that
case supports that reading, and the actual text of the Spill Act
dispels any such notion:

> Whenever one or more dischargers or persons
> cleans up and removes a discharge of a
> hazardous substance, those dischargers and
> persons shall have a right of contribution
> against all other dischargers and persons in
> any way responsible for a discharged hazardous
> substance or other persons who are liable for
> the cost of the cleanup and removal of that
> discharge of a hazardous substance.  In an
> action for contribution, the contribution
> plaintiffs need prove only that a discharge
> occurred for which the contribution defendant
> or defendants are liable pursuant to [N.J.S.A.
> 58:10-23.11g.c.].

N.J. Stat. Ann. § 58:10-23.11f.a.(2)(a) (emphasis added).  To the
extent that additional implicit requirements can be found in a
statute that explicitly states the only things a plaintiff need
prove, the only basis for such a requirement would be the
arguments made about the word "contribution" discussed in Part
III.B above, which do not compel an admission of liability in
order to bring a contribution action.


**IV.  CONCLUSION**

     Alumax asks this Court to read a requirement into CERCLA
that contravenes the purpose of CERCLA, is not required by

controlling precedent, and is specifically rejected by the only
precedent directly on point.  This Court will not do so, nor will
it award Alumax summary judgment as to the Spill Act.  But the
Court will award Alumax summary judgment as to the Settling Work
Defendants' § 107(a) claim, as noted above, because the Settling
Work Defendants concede that <u>Agere</u> requires that result.

    The accompanying Order will be entered.


**<u>December 9, 2010</u>**                  **<u>s/ Jerome B. Simandle</u>**
Date                                 JEROME B. SIMANDLE
                                   United States District Judge